# United States Court of Appeals for the Federal Circuit

06-1202
(Opposition Nos. 91/122,072; 91/122,224; 91/122,193;
91/122,450; 91/122,712 and 91/150,237)

FIRST NIAGARA INSURANCE BROKERS, INC.,

Appellant,

v.

FIRST NIAGARA FINANCIAL GROUP, INC.,

Appellee.

George Gottlieb, Gottlieb Rackman & Reisman, P.C., of New York, New York, argued for appellant. With him on the brief was Barbara Loewenthal.

Paul I. Perlman, Hodgson Russ LLP, of Buffalo, New York, argued for appellee. With him on the brief were Edwin T. Bean, Jr. and Kathleen Sellers.

Appealed from: United States Patent and Trademark Office, Trademark Trial
and Appeal Board

# United States Court of Appeals for the Federal Circuit

06-1202
(Opposition Nos. 91/122,072; 91/122,224;
91/122,193; 91/122,450; 91/122,712 and 91/150,237)

FIRST NIAGARA INSURANCE BROKERS, INC.,

Appellant,

v.

FIRST NIAGARA FINANCIAL GROUP, INC.,

Appellee.

_____

DECIDED: January 9, 2007

_____

Before RADER, <u>Circuit Judge</u>, CLEVENGER, <u>Senior Circuit Judge</u>, and PROST, <u>Circuit Judge</u>.

CLEVENGER, <u>Senior Circuit Judge</u>.

First Niagara Insurance Brokers, Inc. ("FN-Canada") appeals the decision of the Trademark Trial and Appeal Board ("the Board") rejecting FN-Canada's opposition to the registration of certain marks by First Niagara Financial Group, Inc. ("FN-US") on the basis that FN-Canada does not use its marks "in a type of commerce regulable by Congress." <u>First Niagara Ins. Brokers, Inc. v. First Niagara Fin. Group, Inc.</u>, Opposition Nos. 91122072, 91122224, 91122193, 91122450, 91122712, 91150237, slip op. at 36 (T.T.A.B. Oct 21, 2005) ("<u>Board Decision</u>").  We reverse and remand.

The facts relevant to this appeal are undisputed. FN-Canada, an insurance broker, sells insurance policies issued by various underwriting companies to its customers in exchange for a commission. Although FN-Canada has been in continuous operation since 1886, it did not assume the name "First Niagara Insurance Brokers, Inc." until 1984. FN-Canada operates entirely out of Niagara Falls and Niagara-on-the-Lake, in Ontario, Canada, and has no physical presence (e.g., offices, employees, assets, etc.) in the United States. Moreover, FN-Canada is not licensed to act as an insurance broker in any country other than Canada. Nevertheless, FN-Canada's business does have connections to the United States. For example, FN-Canada sells insurance policies issued by United States-based underwriting companies. FN-Canada also sells, through insurance brokers in this country, policies to United States citizens having Canadian property. In other words, if an American owns property in Canada and needs insurance for that property, a domestic broker will contact FN-Canada, who will then provide an appropriate policy issued by one of FN-Canada's underwriters. The domestic broker and FN-Canada share the commission generated by the transaction.

FN-Canada provides insurance to Canadians, as well, to facilitate their travel to the United States. Specifically, FN-Canada sells auto insurance policies with features that allow Canadians to legally operate a motor vehicle in this country (i.e., features that are compliant with a given state's motor vehicle insurance laws); liability insurance to Canadian businesses who bring tourists here; commercial liability policies to Canadian businesses doing business in the United States; and policy riders covering goods being shipped across the border by Canadian companies. When a claim arises under one of

these policies from an incident occurring in the United States, FN-Canada facilitates the processing of that claim with the issuing underwriter. Another FN-Canada customer is the Niagara Falls Bridge Commission ("the NFBC"), which is a joint U.S.-Canada venture that operates bridges between the two countries. The NFBC leases some of its property to businesses, and FN-Canada has in the past sold commercial liability insurance to the NFBC. FN-Canada has also sold insurance to the Indian Defense League of America (which has a Canadian address) in connection with an annual march that group leads over an international NFBC bridge.

FN-Canada does not own any registered United States marks; however, in its advertising (including advertising that "spills over" into the United States) and correspondence (including correspondence to customers and other business contacts in the United States) FN-Canada regularly uses several unregistered marks: "First Niagara," "First Niagara Insurance Brokers," and



The other party to this dispute, FN-US, is also an insurance broker offering services quite similar to those offered by FN-Canada. FN-US is located in Northpointe, New York, and its physical presence is confined to the United States. However, as is the case with FN-Canada, FN-US has both American and Canadian customers. In connection with its business activities, FN-US uses (or intends to use) several marks similar to those used by FN-Canada: "First Niagara," "First Niagara Financial Group," "First Niagara Online," "First Niagara Bank's Customer Connection Line," "First Niagara E-CD," and

06-1202                                                                 3



II

In January of 2000, FN-US began filing intent-to-use applications at the United States Patent and Trademark Office ("USPTO") with respect to each of the marks identified above. FN-Canada subsequently filed oppositions to each of those applications, arguing that FN-US's marks were likely to cause confusion with FN-Canada's marks. FN-US responded by arguing that FN-Canada could not establish the priority necessary to prevail on a likelihood-of-confusion claim because it had not used its marks "in commerce" under 15 U.S.C. § 1127. The Board entertained extended briefing as well as oral argument before ultimately rendering a decision in favor of FN-US on October 21, 2005.

The Board reasoned that "[t]he nexus of [FN-Canada's] services is Ontario and the activities [FN-Canada] undertakes in communicating with U.S. Brokers and clients are simply a necessary part of its Canadian business," and therefore, "[t]he activities with any connection to the United States that [FN-Canada] has established in this record are <u>de minimis</u> and merely incidental to [FN-Canada's] rendering of its insurance brokerage services in Canada." <u>Board Decision</u>, slip op. at 31. The Board further explained that because "the insurance policies or riders brokered by [FN-Canada] that extend certain coverages to the United States or U.S. Citizens in Canada . . . reflect the rights and liabilities of the underwriter, not those of the broker," "[s]uch activities do not

constitute rendering of insurance brokerage services in either interstate or foreign commerce." Id. Accordingly, FN-Canada's oppositions were dismissed.

This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295.

III

"This court reviews the Board's legal conclusions de novo, and the Board's factual findings for substantial evidence." In re Pacer Tech., 338 F.3d 1348, 1349 (Fed. Cir. 2003) (citations omitted).

IV

Section 13(a) of the Lanham Act provides in relevant part:

Any person who believes that he would be damaged by the registration of a mark upon the principal register, including the registration of any mark which would be likely to cause dilution by blurring or dilution by tarnishment under section 43(c), may, upon payment of the prescribed fee, file an opposition in the Patent and Trademark Office, stating the grounds therefor, within thirty days after the publication under subsection (a) of section 12 of this Act of the mark sought to be registered.

15 U.S.C. § 1063(a) (emphasis added). Although Section 13(a) does not explicitly specify valid "grounds" for opposing registration, this court has held that the opposer must state "a statutory ground which negates the applicant's entitlement to registration." Young v. AGB Corp., 152 F.3d 1377, 1380 (Fed. Cir. 1998). The statutory ground relied upon by FN-Canada in opposing FN-US's registration is Section 2(d) of the Lanham Act, which provides in relevant part:

[No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it] [c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive[.]

15 U.S.C. § 1052(d) (emphasis added).

In the proceedings below, the Board based its analysis on the assumption that an "opposer's claim of prior use can succeed only if it has proved use of its marks in connection with services rendered in commerce lawfully regulated by Congress, as required under Section 45 of the Trademark Act, 15 U.S.C. § 1127." Board Decision, slip op. at 23. Such an assumption was unwarranted, however, in light of the plain language of the statute, which merely requires the prior mark to have been "used in the United States by another." 15 U.S.C. § 1052(d). See Nat'l Cable Television Ass'n v. Am. Cinema Editors, Inc., 937 F.2d 1572, 1578 n.4 (Fed. Cir. 1991) ("Were failure to show 'use in commerce' a bar to petitioning for cancellation of a registration, a party could never cancel a mark based solely on intrastate use. This is not the law. Section 14 [through Section 2(d)] requires only prior use; 'in commerce' is noticeably absent."); cf. 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 29:4, at 29-22 (4th ed. 2006) (noting that "there is no requirement in § 43(a) that the plaintiff who invokes that statute must have used the mark in U.S. interstate or foreign commerce"). Indeed, as the Board observed in a footnote in its opinion, "[a]n opposer claiming priority under Section 2(d) may rely on use that is strictly intrastate and not regulable by Congress." Board Decision, slip op. at 23 n.15 (emphasis added). That privilege attaches to all opposers, regardless of whether they are foreign or domestic. Thus, a foreign opposer can present its opposition on the merits by showing only use of its mark in the United States.

In spite of the plain language of the statute requiring mere use, and in spite of this court's highly-relevant precedent, Nat'l Cable Television, 937 F.2d at 1578 n.4,

FN-Canada did not object to FN-US and the Board framing the issue as use "in commerce." FN-Canada, having burdened itself with a higher hurdle than necessary, was apparently found by the Board to have waived the right to argue this case on the correct lesser use requirement.[1] And on appeal, FN-Canada does not contest the Board's assumption of waiver and instead argues its whole case on the ground that its use of its marks satisfies the "use in commerce" test. It is tempting, of course, to simply deem the issue waived and decide this case as it was presented. Upon reflection, however, we believe it would be imprudent to render a decision predicated upon a hypothetical reading of Section 2(d), i.e., as if it requires "use in commerce" instead of "use in the United States." In fact, such a decision would arguably constitute an impermissible advisory opinion given the possibility that FN-Canada may eventually seek, in separate proceedings, to prove that its marks are used "in commerce" in order to obtain its own registration with the USPTO.

Under the correct test, it is clear that the Board erred in dismissing FN-Canada's oppositions. The record unquestionably reveals more than ample use of FN-Canada's marks in the United States to satisfy the use requirements of Section 2(d). Therefore, we are compelled to reverse the decision below.

---

[1] We do note, however, that the "interstate commerce" alleged in FN-Canada's notices of opposition necessarily subsumes "use in the United States." Although we do not fault the Board in this case for having accepted and decided the case on the ground it did, we think in future cases where a section 2(d) challenge is mounted, the Board should apply the correct test even where use in interstate or foreign commerce is alleged.

V

The decision of the Board is reversed and the case is remanded for further proceedings consistent with this opinion.

COSTS

No costs.

<u>REVERSED AND REMANDED</u>