```
THIS OPINION
IS PRECEDENT
OF THE TTAB
```

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, Virginia 22313-1451**

Lykos

Mailed: May 11, 2007

Opposition Nos. 91168152
91170940

Westrex Corporation

v.

New Sensor Corporation

(as consolidated)

Before Quinn, Bucher and Taylor, Administrative Trademark Judges.

By the Board:

This case now comes up for consideration of applicant's motion (filed December 1, 2006) for summary judgment. The motion is fully briefed.[1]

---

[1] Applicant has submitted a reply brief which the Board has considered because it clarifies the issues herein. Consideration of a reply brief is discretionary on the part of the Board. *See* Trademark Rule 2.127(a).

However, insofar as the Board does not consider sur-replies, opposer's "Notice of Subsequently Decided Controlling Authority" (filed February 8, 2007) and applicant's response thereto (filed February 21, 2007) have been given no consideration. *See id.* In any event, the Board is aware of the case law referenced by the parties in their communications, including *First Niagara Insurance Brokers, Inc. v. First Niagara Financial Group, Inc.*, 476 F.3d 867, 81 USPQ2d 1375 (Fed. Cir. 2007).

I.   *Procedural Background*

On November 9, 2004, applicant applied to register the mark GENALEX GOLD LION for "electron tubes, also known as vacuum tubes," based on a bona fide intent to use the mark in commerce.[2]  On June 28, 2005, applicant filed an application to register the mark GOLD LION, for the same goods, alleging June 24, 2005 as the date of first use anywhere and in commerce.[3]  Opposer has opposed registration of both marks on the grounds that each mark so resembles opposer's previously used GOLD LION mark that each is likely to cause confusion, mistake, or deceive prospective consumers under Section 2(d) of the Lanham Act.  In its notices of opposition, opposer alleges that it and its predecessor in interest have extensively and continuously used the mark GOLD LION in connection with electron and vacuum tubes since prior to the filing date of applicant's intent-to-use application to register the mark GENALEX GOLD LION and applicant's alleged date of first use of the mark GOLD LION.

Applicant, in its answer to both notices of opposition, denied the salient allegations and made additional assertions denominated as affirmative defenses.

On September 1, 2006, the Board consolidated the oppositions.

---

[2] Application Serial No. 78513996.
[3] Application Serial No. 78660006.

II. *Applicant's Motion for Summary Judgment*

Applicant has moved for summary judgment on the basis that neither opposer nor opposer's predecessor in interest is the prior user of the GOLD LION mark.[4]

Summary judgment is an appropriate method of disposing of cases in which there are no genuine issues of material fact in dispute, thus leaving the case to be resolved as a matter of law. *See* Fed. R. Civ. P. 56(c). A party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact, and that it is entitled to summary judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548 (1986). The nonmoving party must be given the benefit of all reasonable doubt as to whether genuine issues of material fact exist, and the evidentiary record on summary judgment, and all inferences to be drawn from the undisputed facts, must be viewed in the light most favorable to the nonmoving party. *See Opryland USA, Inc. v. Great American Music Show, Inc.,* 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992). When the moving party's motion is supported by evidence sufficient to

---

[4] The Board notes that applicant included with its motion, as exhibits, papers that had previously been filed (i.e., the parties' protective order for governing the disclosure of confidential information). Applicant is reminded that these papers, by their very nature, already form part of the proceeding file. Accordingly, applicant is requested to refrain from attaching such papers to future filings.

indicate that there is no genuine issue of material fact, and that the moving party is entitled to judgment, the burden shifts to the nonmoving party to demonstrate the existence of specific genuinely-disputed facts that must be resolved at trial.  The nonmoving party may not rest on the mere allegations of its pleadings and assertions of counsel, but must designate specific portions of the record or produce additional evidence showing the existence of a genuine issue of material fact for trial.

As a preliminary evidentiary matter, we note that applicant included in its reply brief a "motion" to strike the declaration of opposer's president, Charles Whitener, on the ground that it contradicts statements made in his discovery deposition.  With its reply brief, applicant has submitted excerpts from the 30(b)(6) deposition of Mr. Whitener, purportedly contradicting his declaration.

In this case, upon careful review of the deposition testimony and declaration, we find that Mr. Whitener's declaration does not contradict so much as it clarifies and explains contradictions given in his deposition.  *See Sinskey v. Pharmacia Opthalmics, Inc.,* 982 F.2d 494, 25 USPQ2d 1290 (Fed. Cir. 1992), *cert. denied,* 508 U.S. 912 (1993). Mr. Whitener acknowledges in his declaration that he "misspoke" during the deposition and attempts to clarify any

discrepancies and inaccuracies.  Applicant's motion to strike the declaration of Mr. Whitener is therefore denied.

A.    *Analysis of the Parties' Priority Dispute*

To establish priority on a likelihood of confusion claim brought under Trademark Act Section 2(d), a party must prove that, vis-à-vis the other party, it owns "a mark or trade name previously used in the United States ... and not abandoned...."  Trademark Act Section 2, 15 U.S.C. Section 1052.  A party may establish its own prior proprietary rights in a mark through ownership of a prior registration, actual use or through use analogous to trademark use, such as use in advertising brochures, trade publications, catalogues, newspaper advertisements and Internet web sites which create a public awareness of the designation as a trademark identifying the party as a source.  *See* Trademark Act Sections 2(d) and 45, 15 U.S.C. Section 1052(d) and 1127; *T.A.B. Systems v. PacTel Teletrac,* 77 F.3d 1372, 37 USPQ2d 1879 (Fed. Cir. 1996), *vacating Pactel Teletrac v. T.A.B. Systems,* 32 USPQ2d 1668 (TTAB 1994).  Priority is an issue in this case because opposer does not own an existing registration upon which it can rely under Section 2(d).  *See King Candy Co., Inc. v. Eunice King's Kitchen, Inc.,* 496 F.2d 1400, 182 USPQ 108 (CCPA 1974).

In order for applicant to prevail on summary judgment, it must demonstrate the absence of a genuine issue of

material fact that opposer did not make actual use or analogous trademark use of the mark GOLD LION prior to November 9, 2004 (the filing date of applicant's intent to use application for the mark GENALEX GOLD LION) and June 28, 2005 (the filing date of application's use application for the mark GOLD LION).[5]

At the outset, we note that opposer does not dispute that it did not make its first sale of products bearing the GOLD LION mark until January 3, 2007 (after the filing of applicant's motion for summary judgment) when it shipped an order of electron tubes to a company located in California. As such, no genuine issue of material fact exists that opposer cannot rely upon its own technical use of the GOLD LION mark for purposes of priority.

Instead, opposer relies on two alternate theories to establish prior rights in the GOLD LION mark: (1) that since 1995 opposer has engaged in analogous trademark use by promoting and engaging in preparations to launch its products under the GOLD LION mark; and (2) that opposer acquired ownership of the GOLD LION mark by a quitclaim assignment dated December 5, 2005 from Chelmer Valve (a distributor of vacuum tubes), and as a consequence, opposer is entitled to rely on Chelmer Valve's date of first use to assert priority

---

[5] Applicant states in its motion for summary judgment that it wishes to rely upon the filing dates of its applications as its priority dates.

6

vis-à-vis applicant, which opposer alleges as June 16, 2003. Applicant contends that the undisputed facts show that neither basis is valid for asserting priority.

>    1.    *Analogous Trademark Use*

First, we turn to the question of whether a genuine issue of material fact exists as to whether opposer has used the mark GOLD LION in a manner analogous to trademark use prior to the filing dates of applicant's applications.

The following facts regarding opposer's pre-sale activities are undisputed:

> -Since 1995, opposer has spent approximately $50,000-$60,000 in advertising expenditures promoting GOLD LION electron tubes (Whitener Declaration, Para. 7). Such promotional activities included creating artwork, packaging, and a web site; announcing the product launch on the web site; issuing a press release; promoting the tubes at trade shows; sending price list of prospective purchasers; acquiring parts and equipment for manufacturer of the tubes; (Whitener Declaration, Para. 5 and Exhibits A-D);

> -Opposer received e-mails dated July 10, 1999, May 22, 2000, September 15, 2000, June 26, 2002, June 4, 2003, December 2003, January 18, 2004, and October 14, 2005, and January 9, 2006 from potential customers inquiring as to the release date of the items. (Ferrari Declaration, Exhibits 9, 11);

> -In October 1998, opposer took an order for GOLD LION tubes, but the order was cancelled (Opposer's responses to applicant's first set of Interrogatory Nos. 1 and 5);

> -Opposer took a "bit of a hiatus" from its promotional activities between 1998-2000 "because of the Asian economic crisis" (Discovery Deposition of Mr. Whitener at 160); and

> -Opposer repeatedly altered on its web site the target date for release of products bearing the GOLD LION mark until finally the web site stated "to be determined."

7

(Ferrari Declaration, Exhibit 10; Web Site Printouts W270, 274, 276, 280, 282, 290,292, 295, 296, 303).

Applicant argues that opposer's eleven years of pre-sales activity do not amount to analogous trademark use, and that opposer has been seeking to improperly "reserve" the GOLD LION mark.  Applicant also maintains that in order to claim the benefit of analogous trademark use, opposer was required to make actual trademark use soon after its pre-sale activities.  Opposer contends that it has established a reputation as being the sole source for GOLD LION tubes via its pre-sale activities, and that various circumstances delayed opposer from making actual sales of tubes under the GOLD LION mark until earlier this year.

Under the theory of analogous use, a party may rely upon pre-sale activities in order to "tack on" non-trademark usage for purposes of establishing priority under Section 2(d). *See* 3 J. Thomas McCarthy on Trademarks and Unfair Competition, § 20:16 (4th Ed. 1996).  Although use analogous to trademark use is sufficient to create a proprietary right in the user for purposes of a likelihood of confusion claim, analogous use must be more than mere advertising.  *In T.A.B. Systems v. PacTel Teletrac,* 37 USPQ2d at 1882, the Court of Appeals for the Federal Circuit summarized the test for the sufficiency of analogous use efforts:  "[W]hether it was sufficiently clear, widespread and repetitive to create the

required association in the minds of the potential purchasers between the mark as an indicator of a particular source and the [product or] service to become available later." The analogous trademark use also must be shown to have a substantial impact on the purchasing public, and the user must establish an intent to appropriate the mark. *Id.* In addition, the "tacking" theory under which use analogous to trademark use operates requires that actual technical trademark use must follow within a commercially reasonable period of time. *Dyneer Corp. v. Automotive Products plc,* 37 USPQ2d 1251 (TTAB 1995); *Evans Chemetics, Inc. v. Chemetics International Ltd.,* 207 USPQ 695 (TTAB 1980).

After reviewing the arguments and supporting papers of the parties and construing all inferences in a light most favorable to opposer, we find that applicant has shown that there is no genuine issue of material fact that opposer failed to acquire rights through analogous trademark use in the GOLD LION mark prior to either November 9, 2004 or June 28, 2005, the filing dates of applicant's respective applications. We conclude that opposer's collective activities noted above do not constitute clear, widespread, and repetitive activities sufficient to have established prior analogous trademark use on the part of opposer. For purposes of establishing priority via analogous trademark use, the critical factor is the actual number of prospective

9

customers reached.  Based on the paucity of e-mail inquiries from prospective consumers (presumably prompted by advertising of the product launch on opposer's web site), it is clear that opposer's efforts to solicit business have neither had any significant impact on the purchasing public as a whole nor "involve more than an insubstantial number of potential customers."  By illustration, the Federal Circuit emphasized this requirement for analogous use in *T.A.B. Systems v. PacTel Teletrac, supra*:

> Nor can there be any doubt that purchaser perception must involve more than an insubstantial number of potential customers. For example, if the potential market for a given service were 10,000 persons, then advertising shown to have reached only 20 or 30 people as a matter of law could not suffice. However close the linkage between the mark and the future service, analogous use could not be shown on such facts because the actual number of potential customers reached, not the strength of the linkage for some "reasonable potential customer," is the focal point of the analogous use inquiry.

*Id.* at 1883.  Opposer has failed to submit any evidence to create a genuine issue of material fact that more than a negligible segment of the marketplace was impacted by its online pre-sale activities.  *See id.*

Furthermore, the $50,000-60,000 in advertising expenditures over an eleven-year time period are insufficient to establish that the necessary association or public identification was indeed created among more than "an insubstantial number of potential customers."  This is especially true given the absence of any indication as to the

10

response, if any, received to any advertising (i.e. print ads, trade shows) unrelated to opposer's web site. Thus, the Board is unable to draw the critical inference that the public identified the term GOLD LION as a source indicator for opposer's goods by virtue of opposer's pre-sale activities.

Lastly, we note that a significant time period (eleven years) elapsed between opposer's pre-sale activities and first technical sale under the GOLD LION mark. Such a lengthy time period is not "commercially reasonable" and indicates that opposer's activities were far too sporadic to rise to the level of analogous use.

Since 1989, domestic applicants in the United States have had the options presented by a dual application system – filing based either on pre-application use in commerce, or based upon a *bona fide* intention to use the mark in commerce.

The legislative history of the Trademark Law Revision Act of 1988 (TLRA) demonstrates that achieving greater certainty in the acquisition of trademark rights by providing clear notice to third parties was a driving force behind the changes in the provisions of use and constructive use.

It is readily apparent that the constructive use provision of §7(c) of the Lanham Act, as amended, was intended to foster the filing of intent-to-use applications. By according conditional rights to those who publicly

disclose their marks, constructive use encourages the early filing of applications and the searching of trademark records prior to the adoption of and investment in new marks. Constructive use provides an intent-to-use applicant a superior right over anyone adopting a mark after applicant's filing date (providing the applicant's mark is ultimately used and registered) and to prevent a third party from acquiring common law rights in a mark after the filing date of the intent-to-use application. Under this intent to use system, "token use" became unnecessary and inappropriate. Thus, a mere token sale or shipment of the goods does not constitute "use" under the Trademark Act. *See Paramount Pictures Corp. v. White,* 31 USPQ2d 1768, 1774 (TTAB 1994) [noting that the purpose of the Trademark Law Revision Act of 1988 was to eliminate "token use" as a basis for registration, and that the new, stricter standard contemplates instead commercial use of the type common to the particular industry in question]. H.R. Rep. No. 100-515, 100th Congress, 2d Sess.

Opposer, acting at its peril, failed to take advantage of the intent-to-use provisions provided by the Trademark Law Revision Act. Thus, in order to assert priority vis-à-vis applicant, opposer had to rely on the doctrine of analogous use. Based on the facts established by the evidence of

12

record, opposer has failed to meet the threshold requirements to benefit from that doctrine.

   2.    *Opposer's Assertion of Prior Rights via Chelmer Valve as a Predecessor in Interest*

Next we consider opposer's second basis for asserting prior rights in the GOLD LION mark, namely, that it acquired ownership of the GOLD LION mark by assignment from Chelmer Valve, and that opposer is entitled to rely on Chelmer Valve's alleged date of first use to assert priority vis-à-vis applicant.

It is undisputed that the only evidence on record of Chelmer Valve's U.S. sales consist of two transactions, the first consisting of the sale of three tubes to an individual in Minnesota on June 16, 2003, and the second transaction consisting of the sale of two tubes to the same individual on September 26, 2003.

Applicant has moved for summary judgment on the grounds that it is undisputed that Chelmer Valve was merely a U.S. distributor of vintage electron tubes manufactured in the United Kingdom, and therefore had no authority to assign the GOLD LION mark to opposer. Applicant also maintains that there is no genuine issue of material fact that Chelmer Valve failed to continuously use the GOLD LION mark in commerce since June 2003. Opposer, however, argues that Chelmer Valve was a manufacturer of such tubes, and that it acquired

13

ownership of the mark by quitclaim assignment dated December 5, 2005 from Chelmer Valve.

Even if issues may exist as to whether or not Chelmer Valve owned, and had the authority to assign, the GOLD LION mark (either as a distributor or manufacturer) to opposer, such issues are not material in this case. The documentary evidence of two sales transactions to the same purchaser, approximately three months apart, fails to support a finding of prior and continuous use of the GOLD LION mark by Chelmer Valve. By logical extension, opposer cannot rely on Chelmer Valve as a predecessor in interest for asserting priority over applicant.

In sum, we find that applicant has met its burden of demonstrating that there are no genuine issues of material fact regarding applicant's priority, and that applicant is entitled to judgment as a matter of law.

Accordingly, judgment is entered against opposer, and the oppositions are dismissed with prejudice.