This Decision is a
Precedent of the TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**

Goodman

Mailed:  March 15, 2010

Opposition No. 91190607

Fiat Group Automobiles S.p.A.

v.

ISM, Inc.

Before Quinn, Holtzman and Ritchie, Administrative Trademark
Judges.

By the Board:

Fiat Group Automobiles S.p.A. (hereinafter "opposer")
has filed an opposition to the application of ISM, Inc.
(hereafter "applicant") to register the mark PANDA[1] for
Class 12 "automobiles" on the grounds of a lack of bona fide
intent to use the mark in commerce and dilution.  Opposer
has not alleged ownership of a United States registration or
any use of the mark in the United States in the notice of
opposition, but has alleged continuous use since 1980 of the
trademarks FIAT PANDA and PANDA on automobiles in Europe and
most major industrial countries of the world, indicating its
intent to "rely on 6*bis* of the Paris Convention and Article
16(2) of the WTO Agreement on Trade-Related Aspects of

---

[1] Application Serial no. 76681246, filed August 28, 2007 based on
intent to use.

Intellectual Property Rights (TRIPS) as further support for this Notice of Opposition." ¶¶ 3, 14 of the notice of opposition. Opposer alleges that its marks "are in the category of famous marks in the United States" by virtue of being "well known" and "famous" worldwide due to worldwide branding and promotional efforts. Opposer further asserts that if registration is granted to applicant, it "would be a source of extreme damage and injury to Fiat's well-known FIAT PANDA and PANDA marks worldwide." ¶¶ 5, 6, 11, and 14 of the notice of opposition.

This case now comes up on applicant's motion, filed August 20, 2009, to dismiss under Fed. R. Civ. P. 12(b)(6) for opposer's failure to state a claim upon which relief can be granted.

In its motion to dismiss, applicant argues that opposer has "failed to plead the requisite elements of a Section 43(c) claim or any claim upon which relief may be granted." Applicant also argues that opposer has failed to assert standing because it has no reasonable basis for damage in the absence of an allegation of "continuing prior use of any form of 'Panda' in the United States."

Opposer, on the other hand, argues that it has alleged standing by its assertions of damage "on the grounds that Fiat's own internationally-famous FIAT PANDA and PANDA marks will be diluted." Opposer submits that its dilution claim

is sufficiently pleaded in accordance with the four factors set forth in *Polaris Indus., Inc. v. DC Comics*, 59 USPQ2d 1798 (TTAB 2000) by its allegations that (1) applicant has filed an intent-to-use application, (2) opposer's marks are famous and distinctive, (3) opposer's marks acquired fame long prior to the date applicant filed its application, and (4) registration of applicant's mark would dilute opposer's famous FIAT PANDA and PANDA marks. Opposer also states that applicant "conveniently ignores" opposer's claim that applicant lacks a bona fide intent to use the mark, which, opposer submits, is sufficiently pleaded.

In order to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, a plaintiff need only allege such facts as would, if proved, establish that (1) the plaintiff has standing to maintain the proceedings, and (2) a valid ground exists for opposing the mark. *Fair Indigo LLC v. Style Conscience*, 85 USPQ2d 1536, 1538 (TTAB 2007) and cases cited therein.

For purposes of determining a Rule 12(b)(6) motion to dismiss, all of plaintiff's well-pleaded allegations must be accepted as true, and the complaint must be construed in the light most favorable to plaintiff. *See Advanced Cardiovascular Systems Inc. v. SciMed Life Systems Inc.*, 988 F.2d 1157, 26 USPQ2d 1038 (Fed. Cir. 1993); *see also* 5A Wright & Miller, Federal Practice And Procedure: Civil 2d

§ 1357 (1990).  The purpose of a Rule 12(b)(6) motion is to allow for elimination of "actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity."  *Advanced Cardiovascular Systems*, 26 USPQ2d at 1041.

Considering first whether opposer's allegations of standing are sufficient, the briefing of the motion to dismiss indicates that opposer is the owner of a Section 66(a) application for registration of FIAT PANDA in the United States.  On August 1, 2009, the Office made a provisional refusal of opposer's application based on prior pending applications, including application Serial No. 76681246, the application involved herein.

The filing of opposer's application and the Office's action taken in regard to that application provides opposer with a basis for pleading its standing, and opposer is granted leave to amend the notice of opposition to assert standing on this basis (see *infra*).  *See e.g., Life Zone Inc. v. Middleman Group Inc.*, 87 USPQ2d 1953 (TTAB 2008) (standing found based on opposer's ownership of pending trademark application and Office action which resulted in suspension of its application due to involved application being cited as a potential bar to registration).

We turn now to the sufficiency of opposer's dilution claim based on opposer's ownership of an allegedly "well known" mark for which opposer has not alleged use in the United States. The sufficiency of the dilution claim is the only real issue before us, for it is clear that opposer will be able to amend its pleading, as discussed above, to properly assert its standing, and as discussed infra, opposer has already properly pleaded a claim that applicant lacks a bona fide intention to use the applied-for mark in commerce.

Under the "well known mark" doctrine, also known as the "foreign famous mark" doctrine, a party asserts that its mark, while as yet unused in the United States, has become so well known here that it may not be registered by another. *Franpovi SA v. Wessin*, 89 USPQ2d 1637, 1638 n.3 (TTAB 2009). However, as the Board noted recently in *Bayer Consumer Care AG v. Belmora LLC*, 90 USPQ2d 1587, 1592 n.4 (TTAB 2009), the "well known mark" doctrine is a minority view which provides no independent federal cause of action and no additional substantive rights beyond those found in the Lanham Act. Our primary reviewing court has noted that while "[t]here is no question but that Congress generally intended section 44 of the Lanham Act to implement the Paris Convention . . . this does not mean that Congress intended to do so in every respect or that it actually accomplished that objective in

all respects or that it correctly understood the requirements of the Paris Convention in enacting section 44." *In re Rath*, 402 F.3d 1207, 74 USPQ2d 1174, 1177 (Fed. Cir. 2005) citing Lanham Act § 45, 15 U.S.C. § 1127 (2000) and H.R. Rep. No. 78-603, at 4 (1943). Moreover, courts have observed that Congress has enacted no specific implementing legislation with respect to Article 16(2) of TRIPs which relates to "well known marks," and that nowhere in the Lanham Act itself is the "well known mark" doctrine specified. *ITC Ltd. v. Punchgini Inc.*, 482 F.3d 135, 82 USPQ2d 1414, 1431-1432 (2d Cir. 2007) (finding no right to protection for "well known marks" under Sections 44(b) and 44(h) of the Lanham Act), *citing Almacenes Exito S.A. v. El Gallo Meat Mkt.*, 381 F.Supp.2d 324, 326-27 (S.D.N.Y. 2005). *See also Bayer*, 90 USPQ2d at 1591 (absent use in the United States, Sections 44(b) or (h) do not provide the user of an assertedly famous foreign trademark with an independent basis for cancellation in a Board proceeding).

Furthermore, to the extent the "well known mark" doctrine is recognized at all, as discussed herein, pleading only use of such a mark outside the United States without any pleading of widespread recognition of the mark within the United States as signifying a particular source of goods, even if such source is anonymous, is an insufficient basis for a claim of dilution.

Dilution under the Trademark Dilution Revision Act ("TDRA"), § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), is made available to Board opposition proceedings by § 13(a) of the Trademark Act, 15 U.S.C. § 1063.[2]  The TDRA became effective on October 6, 2006, revising the Federal Trademark Dilution Act of 1995 ("FTDA"), codified at 15 U.S.C. § 1125(c), which had created a new federal cause of action against the dilution of famous marks.

We turn then to the requirements of the TDRA.  Absent contrary binding authority, we read the TDRA according to its plain meaning and consistent with the purpose behind the Lanham Act.  Section 43(c) allows an "owner of a famous mark" to be "entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark."  A mark is famous for purposes of the TDRA if it "is widely recognized by the general consuming public of the United States as a

---

[2]  Trademark Act § 13 provides that "[a]ny person who believes that he would be damaged by the registration of a mark upon the principal register, including the registration of any mark which would be likely to cause dilution by blurring or dilution by tarnishment under section 1125(c) of this title, may, ... file an opposition . . . ."

designation of source of the goods or services of the mark's owner."[3] 15 U.S.C. § 1125(c)(2)(A).

While the TDRA provides a definition of "fame" for purposes of dilution, it does not specifically define the term "mark."  For that definition, we refer to § 45, 15 U.S.C. § 1127 of the Lanham Act.

The "normal rule of statutory construction" is "that identical words used in different parts of the same act are intended to have the same meaning."  *Sullivan v. Stroop*,

---

[3] In comparing "well known mark" fame, in the context of likelihood of confusion, and dilution fame, one commentator notes that "[t]he test of what marks are eligible is different for the two legal doctrines or rules. . . . to invoke the 'well-known' marks doctrine of the Paris Convention, the degree of reputation that is necessary is that the trademark is sufficiently well known in the relevant sector of the public in the U.S. such that this defendant's use is likely to cause confusion.  This should not be confused with the very high degree of 'fame' required to qualify a mark as 'famous' in order to invoke the special scope of exclusivity granted by the anti-dilution law.  That is an entirely different matter." 4 J. Thomas McCarthy, *4 McCarthy on Trademarks and Unfair Competition* § 29:61 (4th Ed. 2002 and updated 2009).  *See also Empresa Cubana del Tabaca v. Culbro Corp.*, 70 USPQ2d 1650, 1692 (S.D.N.Y. 2004), rev'd on other grounds, 399 F.3d 462, 73 USPQ2d 1936 (2d Cir. 2005) (while the "mark was famous within the meaning of the famous marks doctrine . . . it does not meet the considerably more stringent requirements of the FTDA"); *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1106, 73 USPQ2d 1258, 1271 (9th Cir. 2004); Anne Gilson LaLonde, *Don't I Know You From Somewhere? Protection in the United States of Foreign Trademarks that Are Well Known But Not Used There*, Vol. 98 Trademark Reporter 1379, 1396 (November-December 2008) ("Under U.S. dilution law, trademarks must be 'widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner.' Is it remotely possible that a mark that is not even in use in the United States could reach such a level of fame?").  *Cf. NASDAQ Stock Market Inc. v. Antartica S.r.l.*, 69 USPQ2d 1718, 1736 (TTAB 2003) ("establishing fame for dilution purposes is a more rigorous endeavor than establishing fame for a Section 2(d) likelihood of confusion analysis") *citing Toro Co. v. ToroHead Inc.*, 61 USPQ2d 1164, 1180-81 (TTAB 2001).

496 U.S. 478, 484 (1990) (quoting *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986)).  Where "Congress defines what a particular term 'means,' that definition controls to the exclusion of any meaning that is not explicitly stated in the definition."  *U.S. v. Roberson*, 459 F.3d 39, 53 (1st Cir. 2006) citing 1A & 2A Norman J. Singer, Sutherland: Statutes and Statutory Construction, §§ 20:8, 47:07 (6th ed. 2000), which in turn cites *Colautti v. Franklin*, 439 U.S. 379, 392 n.10 (1979); *see also Florida Dep't of Banking & Fin. v. Board of Governors of Fed. Reserve Sys.*, 800 F.2d 1534, 1536 (11th Cir. 1986) ("It is an elementary precept of statutory construction that the definition of a term in the definitional section of a statute controls the construction of that term wherever it appears throughout the statute.").  Section 45 of the Lanham Act states that the defined terms have the given meanings when used in the statute "unless the contrary is plainly apparent from the context."

Utilizing the statutory definition of "mark" to infuse our understanding of "famous mark" as referenced in the TDRA leaves no doubt that any reference in that act to a "famous mark" is a reference to a mark in use in the United States, or for which there is an intent to use the mark in the United States coupled with an application for registration.

9

See Section 45 which defines a "mark" to include "any trademark, service mark, collective mark, or certification mark" and which defines each of those types of marks as including marks in use or which are intended to be used and are the subjects of applications for registration.[4] "Used" means use of the mark in the United States. The meaning of "use" in this context is not limited to use in commerce, and there are various types of use which, if sufficiently widespread or widely known, might provide support for a dilution claim.[5] *See* S. Rep. 100-515 100th Cong. at 44 (1988)(definition reflects that marks can exist at common law or in strictly intrastate use). *Cf. First Niagara Insurance Brokers Inc. v. First Niagara Financial Group Inc*., 476 F.3d 867, 81 USPQ2d 1375, 1378 (Fed. Cir. 2007) (under Section 2(d), "a foreign opposer can present its

---

[4] Generally, a plaintiff asserting a dilution claim will be relying on a mark in use in the United States, for the legislative history of dilution legislation speaks of marks in widespread use. See H.R. Rep. 104-374, 104th Cong. at 3 (1988), in regard to the FTDA, which preceded the TDRA (" . . . . A federal dilution statute is necessary because famous marks ordinarily are used on a nationwide basis and dilution protection is currently only available on a patch-quilt system of protection, in that only approximately 25 states have laws that prohibit trademark dilution.").

[5] As noted, supra, the requisite extent of a mark's fame, whether derived through use in commerce, intrastate use, use analogous to trademark use, or some other type of activity sufficient to create an association between a mark and a particular source of goods, will vary according to the nature of the claim. For a dilution claim, however, the use or recognition must be widespread for there to be any possibility that the mark's fame in the United States will be sufficient.

opposition on the merits by showing only use of its mark in the United States"); *National Cable Television Association Inc. v. American Cinema Editors Inc*., 937 F.2d 1572, 19 USPQ2d 1424, 1429 (Fed. Cir. 1991) (prior public identification of petitioner with the name ACE for awards from use analogous to service mark usage provides sufficient basis for petitioner to object to registration); *Giersch v. Scripps Networks Inc*., 90 USPQ2d 1020, 1022 (TTAB 2009) (party may establish its own prior proprietary rights in a mark through ownership of a prior registration, actual use or through use analogous to trademark use, such as use in advertising brochures, trade publications, catalogues, newspaper advertisements and Internet websites which create a public awareness of the designation as a trademark identifying the party as a source); *Shalom Children's Wear Inc. v. In-Wear A/S*, 26 USPQ2d 1516, 1519 (TTAB 1993) (non-technical use of a trademark in connection with the promotion or sale of a product has consistently been held sufficient use to establish priority rights against subsequent users of the same or similar marks); *Big Blue Products Inc. v. International Business Machines Corp*., 19 USPQ2d 1072 (TTAB 1991) (a company may have a protectable property right in a term even if it has not made use of the term, if the public has come to associate the term with the company or its goods or services); *American Stock Exchange,*

*Inc. v. American Express Company*, 207 USPQ 356, 363 (TTAB 1980) (for purposes of priority, use of a mark in a manner analogous to trademark use, such as use in advertising, use as a grade mark, use as the salient or distinguishing feature of a trade name, use of an acronym or of the initial letters of a corporate name may be considered). *Compare Hornby v. TJX Companies Inc*., 87 USPQ2d 1411 (TTAB 2008) (petitioner that had abandoned use in the United States of her personal name mark, was unable to prevail on either a likelihood of confusion or dilution claim, but was able to prevail on a claim of false suggestion of a connection with petitioner's persona, due to continuing fame and reputation of petitioner within the United States).

We note that a requirement for pleading some type of use or intent to use coupled with the filing of an application, and widespread recognition of the mark in the United States, is consistent with the concept of territoriality, basic to trademark law. *See Person's Co. Ltd. v. Christman*, 900 F.2d 1565, 14 USPQ2d 1477, 1479 (Fed. Cir. 1990)[6] That is, activity solely outside the United

---

[6] As noted in *Person's,* Section 44 of the Lanham Act allows a foreign applicant to obtain a registration in the United States without ever having used the mark in United States commerce. However, once registered, a Section 44(e) registrant is "subject to the same [national] treatment and conditions which prevail in connection with domestic registrations based on use in the United States." *Imperial Tobacco Ltd. v. Philip Morris Inc*., 899 F.2d 1575, 14 USPQ2d 1390, 1393 (Fed. Cir. 1990).

States is ineffective to create or maintain rights in marks within the United States.  *Id.; Stagecoach Properties, Inc. v. Wells Fargo & Company*, 199 USPQ 341, 349 (TTAB 1978).  Further, the Board cannot overlook the governing definition in Section 45 of "mark," when assessing applicability of the TDRA, as the Board must take into account all relevant parts of the statute.  *See In re Nantucket, Inc.*, 677 F.2d 95, 213 USPQ 889, 892 (CCPA 1982) (each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole); *United States Telecom Ass'n v. FCC*, 227 F.3d 450, 463 (D.C. Cir. 2000) (noting "the well-accepted principle of statutory construction that requires every provision of a statute to be given effect").  Moreover, it would simply make no sense here to dismiss the statutory definition of "mark" as not relevant to the TDRA, and nothing in the TDRA indicates such definition may be ignored in interpreting the extent of protections offered under the TDRA.  We must, however, at least recognize the possibility that, in an unusual case, activity outside the United States related to a mark could potentially result in the mark becoming well-known within the United States, even without any form of activity in the United States.

Therefore, while Section 43(c) provides a dilution cause of action for the protection of famous unregistered

13

marks, it does not provide a cause of action for famous unregistered marks not in use, in some way, in the United States, in the absence of a specific pleading of intent to use, the filing of an application for registration, and some basis for concluding that recognition of the mark in the United States is sufficiently widespread as to create an association of the mark with particular products or services, even if the source of the same is anonymous and even if the products or services are not available in the United States.

Inasmuch as opposer's dilution claim relies on the alleged fame of a "well known mark" but opposer has not alleged any particular type of use or specific facts which could be proved at trial as demonstrating widespread recognition of its mark in the United States, opposer's dilution claim is insufficient.  We note, in this regard, the pleading of such a claim cannot merely allege recognition and fame outside the United States and presume that recognition and fame in the United States follows as a matter of course.  Rather, to properly plead a dilution claim of this type, opposer must assert facts that it expects to prove at trial that would demonstrate the recognition and fame of its PANDA and FIAT PANDA marks in the United States, however created.  As the notice of

14

opposition does not plead such facts, opposer's dilution claim must fail as a matter of law.

Turning next to the ground of lack of a bona fide intent to use the mark in commerce, we find opposer's allegations that applicant has not been engaged in the manufacture or sale of automobiles under the claimed mark or otherwise, and, therefore, applicant lacks a bona fide intent to use the mark in commerce, to state a sufficient claim.[7] *See Honda Motor Co. v. Winkelmann*, 90 USPQ2d 1660, 1662 n.5 (TTAB 2009) (finding no evidence of bona fide intent to use the mark "where there is no evidence that applicant is engaged in the manufacture or sale of automobiles under the claimed mark"); *Boston Red Sox Baseball Club LP v. Sherman*, 88 USPQ2d 1581, 1587 (TTAB 2008) (no bona fide intent found because no relevant business established).

In summary, applicant's motion to dismiss is granted with respect to the dilution claim. However, to proceed even on the lack of bona fide intent to use claim opposer must, within THIRTY DAYS from the date of this order file an amended notice of opposition to properly plead its standing

---

[7] Opposer alleges in ¶2 that "[o]n information and belief, Applicant has never been in the automotive manufacturing industry, nor does it intend to be in the automotive manufacturing industry in the future" and in ¶13 that ". . . Applicant did not have a bona fide intent to use the mark at the time the application was filed."

based on its ownership of an application wherein there is a prospective likelihood of confusion refusal based on the present application. Opposer is also granted leave to replead its dilution claim, if there is basis for doing so. If no amended pleading is filed, the opposition will be dismissed. If an amended pleading is filed to properly plead opposer's standing, but remains an insufficient pleading of dilution, then the case will go forward solely on the ground of a lack of bona fide intent to use the mark in commerce.[8]

Proceedings herein remain otherwise suspended until further written notice by the Board. Upon resumption, applicant's time to answer and all other dates, will be reset.

---

[8] Any allegations which relate to false designation of origin or deception, i.e., "[applicant's mark] is deceptively similar to Fiat's Marks so as to cause deception as to the origin of Applicant's goods bearing the Opposed mark" should be omitted from an amended notice of opposition as these allegations relate to § 43(a), 15 U.S.C. § 1125(a), claims which are outside the Board's jurisdiction. *Person's*, 14 USPQ2d at 1481.