73 F.3d 379
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 TZU WEI CHEN FOOD CO., LTD., Appellant,
v.
CHIA-CHI ENTERPRISES, INC., Appellee.
 No. 94-1527.
 United States Court of Appeals, Federal Circuit.
 Dec. 5, 1995.
 
 Before NEWMAN, CLEVENGER, and RADER, Circuit Judges.
 CLEVENGER, Circuit Judge.
 
 
 1
 Tzu Wei Chen Food Co., Ltd. (Tzu Wei) appeals the June 6, 1994 reconsideration decision of the Trademark Trial and Appeals Board (Board) refusing to register the mark BLACK BRIDGE (the English translation of HEI CHIAO) on grounds of prior use by opposer Chia-Chi Enterprises, Inc. (Chia-Chi). We reverse-in part and vacate-in-part.
 
 
 2
 * In this case we revisit a dispute which previously came before this court in inverted form. In its previous incarnation, appellee Chia-Chi's attempt to register the mark HEI CHIAO in the United States was opposed by appellant Tzu Wei, a Taiwanese corporation which has owned and used the mark in Taiwan for many years. We affirmed a decision of the Board that denied Chia-Chi's application for registration because Chien Ming Huang, who owned Chia-Chi at that time, had transferred ownership in the mark from himself to Chia-Chi between the time that he executed the application and the time the application was received by the Patent and Trademark Office. Therefore, Mr. Huang was not the owner of the mark on the application's filing date, and the application was fatally defective. Chien Ming Huang v. Tzu Wei Chen Food Co., 849 F.2d 1458, 7 U.S.P.Q.2d 1335 (Fed.Cir.1988). That decision cleared the way for this proceeding in which Tzu Wei seeks, and Chia-Chi opposes, registration of the same mark.
 
 II
 
 3
 On May 14, 1982, Tzu Wei filed an application to register the mark BLACK BRIDGE for processed pork, beef, and fish; sausage; and frozen and canned seafood. Pursuant to Sections 2(d) and 13(a) of the Lanham Act, 15 U.S.C. Secs. 1052(d), 1063(a) (1994), Chia-Chi opposed the mark on the ground that Chia-Chi was a prior user of the mark for dried beef and sausage.
 
 
 4
 A section 2(d) opposition requires the opposer to show that the applicant's mark will create a likelihood of confusion and that the opposer used its mark in the United States before the applicant's use.* In the present dispute, both parties concede that there is a likelihood of confusion based on the similar name and nature of the product. Therefore, priority alone is in dispute. Based on the submitted evidence, the Board determined that Chia-Chi had established a priority date of December 17, 1981, which defeated Tzu Wei's filing (and constructive priority) date of May 14, 1982. In addition, the Board rejected Tzu Wei's assertion that Chia-Chi had adopted the BLACK BRIDGE mark in bad faith, stating that the mark was not famous in the United States at the time of Chia-Chi's adoption. After the Board denied Tzu Wei's request for reconsideration, Tzu Wei appealed here.
 
 III
 
 5
 A finding of prior use by the Board is one of fact which we review under the clearly erroneous standard. West Florida Seafood, Inc. v. Jet Restaurants, Inc., 31 F.3d 1122, 1125, 31 U.S.P.Q.2d 1660, 1662 (Fed.Cir.1994). A finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 76 U.S.P.Q. 430, 443 (1948). Where, as here, the prevailing party below had the burden of proving its version of events to a preponderance, the appellate court must be on guard against a finding based on evidence which is simply not weighty enough to carry the party's burden. Put simply, the party with the burden must prove its case. Thus, the question for the appellate court is not only: are we certain whether the event in question did or did not occur, but additionally: did the party with the burden of proof present evidence of such quantity and caliber upon which a factfinder could reliably make the finding under review.
 
 
 6
 In this case, the Board relied on several discrete pieces of evidence to support its inferential finding of prior use by Chia-Chi. Were each of these pieces of evidence sturdy, their combined force and effect would unquestionably warrant a finding of prior use by Chia-Chi. Careful examination, however, reveals that some of the pieces of evidence relied on by the Board were inadmissible, while others were not entitled to the probative value given them by the Board. In sum, the evidence before the Board was quite sufficient to prove that Chia-Chi had the opportunity to use the mark before May 14, 1982. But the opportunity to use is not proof of use.
 
 
 7
 In addition, the record in this case is as remarkable for what it does not contain as for what it does. As we more fully describe below, Chia-Chi did not offer a single shred of direct evidence, through either testimony or documents, to support its claim of prior use. Furthermore, it failed to produce important, easily-procured documents which would have greatly bolstered its claim of prior use. Assessing the "entire evidence," as Gypsum requires, we consider these omissions, and the inferences they emit, in determining whether the Board's finding of prior use was clearly erroneous.
 
 
 8
 In sum, the evidence in this case was not sufficient to convince a reasonable factfinder that Chia-Chi had used the HEI CHIAO mark prior to Tzu Wei's filing date. To demonstrate why, we now examine in turn the pieces of evidence relied on by the Board.
 
 IV
 
 9
 The first piece of evidence relied on by the Board to support an inference of prior use by Chia-Chi consisted of several United States Department of Agriculture (USDA) label approval applications comprising the HEI CHIAO mark which were filed by Chia-Chi before Tzu Wei's trademark application filing date. Only one of the USDA approvals cited by the Board, however, was a final approval. The other applications in the record were approved by the USDA only as "sketches." As Chia-Chi's own witness testified, without final USDA approval, shipment of meat products in interstate commerce is unlawful. See 9 C.F.R. Sec. 354.60 (1995). Therefore, most of the USDA applications in this record cannot support Chia-Chi's position.
 
 
 10
 Even the one final approval from the USDA which predates Tzu Wei's filing date is not direct evidence of prior use by Chia-Chi. USDA label approvals simply give the applicant permission to use a particular label. They do not prove when (or even whether) the label was first used in commerce. Therefore, this label, although admissible and relevant, serves only a corroborative role. It cannot, by itself, support a finding of prior use by Chia-Chi.
 
 
 11
 Next, the Board relied on Chia-Chi's rejected trademark application (the subject of the prior litigation between these parties) which claimed use as of December 1981, to support an inference of prior use by Chia-Chi. The Board recognized that the rejected application itself could not create any trademark rights in Chia-Chi, but nevertheless credited this evidence since "the filing of the application is consistent with the rest of the picture formed by [Chia-Chi's] evidence as a whole." Allegations in a trademark application of a date of use, however, are not evidence of such use. Cf. 37 C.F.R. Sec. 2.122(b)(2) (1994). We agree that the rejected trademark application could be instructive, but only if consistent with other reliable evidence pointing in the same direction. As an independent source of evidentiary support, however, the rejected application has no weight.
 
 
 12
 The Board also relied on financial statements and ledger sheets prepared by Chia-Chi's accountant. As the Board itself noted, these ledger sheets make no reference to the HEI CHIAO trademark and therefore cannot stand as proof that Chia-Chi's use of that mark predated Tzu Wei's filing date. Moreover, since Chia-Chi admits that it markets its products under several trademarks, these financial statements could just as easily refer to sales by Chia-Chi under one of its other marks.
 
 
 13
 Several pieces of evidence relied on by the Board derived from responses to interrogatories in the prior opposition proceeding. The first involved a response by Dr. Wen-Ping Wang, who took over Chia-Chi in the fall of 1982, to an interrogatory from Tzu Wei requesting a list of all advertisements which Chia-Chi had ever placed for its HEI CHIAO line of products. Dr. Wang's response referred to an ad from the World Journal of December 17, 1981, even though Dr. Wang's response candidly admitted that his company had no specific records relating to company advertising placed before September 1982. Although, Chia-Chi never produced a hard copy of the December 17 ad and Dr. Wang was never asked if he had seen the ad, the Board relied on this response as evidence of use analogous to trademark use prior to Tzu Wei's critical date. Tzu Wei argues that Dr. Wang's reference to the December 17 ad could not be based on personal knowledge and therefore is not probative of prior use as of the date of the ad.
 
 
 14
 Tzu Wei's concern has merit. Dr. Wang himself testified that he did not become interested in purchasing Chia-Chi until August 1982, well after the advertisement in question was published. Absent specific records proving the existence of the December 17 ad, or personal knowledge of Dr. Wang to that effect, the one reference to the December 17 ad in the answer to the interrogatory, certainly cannot prove prior use as of that date. To sustain proof that publication in an advertisement is analogous to use of the mark, the fact of publication must be established by competent evidence. Chia-Chi failed to establish that fact.
 
 
 15
 The next pieces of evidence relied on by the Board are responses by Tzu Wei to two additional interrogatories (Nos. 47 and 52) served by Chia-Chi in the previous opposition. We reproduce them in full in order to demonstrate why they cannot bear the evidentiary weight given them by the Board:
 
 
 16
 No. 47: Has opposer ever taken the position or believed that its rights in the mark BLACK BRIDGE have been infringed by other persons or entities? If so, for each such person or entity, state separately:
 
 
 17
 (a) its name and address;
 
 
 18
 (b) a description of the trade name or mark used by such entity;
 
 
 19
 (c) the type of goods or services on or in connection with which they used such trade name or mark;
 
 
 20
 (d) inclusive dates they used such trade name or marks;
 
 
 21
 (e) the territories or areas in which they used such trade name or marks;
 
 
 22
 (f) a description, or other means of identification of each specimen, mark, document, or other tangible thing on which Opposer relied to support such contention; and
 
 
 23
 (g) the name, address and title or position of each person who has knowledge of the alleged infringement.
 
 Answer to No. 47:
 
 24
 (a) Chia-Chi Enterprise
 
 
 25
 (b) Hei-chiao with the equivalent Chinese attached.
 
 
 26
 (c) Sausage, dried shredded por[k], jerked pork.
 
 
 27
 (d) Since 1981
 
 
 28
 (e) USA
 
 
 29
 (f) false advertisement, package of products.
 
 
 30
 (g) Mr. Huang.
 
 No. 52: State or describe the following:
 
 31
 (a) the date Opposer first learned of the existence of Applicant;
 
 
 32
 (b) the date Opposer first learned of Applicant's use of the mark BLACK BRIDGE;
 
 
 33
 (c) the circumstances under which Opposer learned of the existence of applicant's use of the mark BLACK BRIDGE; and
 
 
 34
 (d) identify any documents referring to, evidencing or embodying Opposer's awareness of Applicant and its use of the mark BLACK BRIDGE.
 
 Answer to No. 52:
 
 35
 (a) April 1982.
 
 
 36
 (b) April 1982.
 
 
 37
 (c) Saw the merchandise sold by Applicant.
 
 
 38
 (d) The label on the merchandise sold by Applicant.
 
 
 39
 We pause momentarily to consider the possible effects of these admissions by Tzu Wei. The law distinguishes between two types of admissions: conclusive admissions and evidential ones. Conclusive admissions are binding on the party making them, and preclude the admitting party from offering proof to refute the admission. In contrast, evidential admissions are not binding; instead, they merely constitute admissible evidence to be considered in combination with all other relevant evidence. The great weight of authority holds that responses to interrogatories are not conclusive admissions, and we see no reason to resist that authority in this case. See, e.g., Donovan v. Crisostomo, 689 F.2d 869, 875 (9th Cir.1982); Fidelity & Deposit Co. of Maryland v. Hudson United Bank, 653 F.2d 766, 777 (3rd Cir.1981); Freed v. Erie Lackawanna Railway Co., 445 F.2d 619, 620 (6th Cir.1971). Consequently, these admissions by Tzu Wei, although relevant and admissible evidence, are not entitled to conclusive weight in this proceeding.
 
 
 40
 Turning to the evidentiary value of the admissions themselves, we think that the Board overstated the significance of these admissions, and taken as a whole, the evidence in the record weakens their probative value. For example, in response to interrogatory No. 47, Tzu Wei stated in section (c) that the types of goods they had seen were "sausage, dried shredded por[k], [and] jerked pork." It is clear from the discussion above regarding USDA label approvals, however, that Tzu Wei could not have seen Chia-Chi's sausage or pork jerky as early as 1981 since the final label approvals were not received from the USDA for these products until January 19, 1982 and May 6, 1982 respectively. Similarly, the record contains no final label approvals for "dried shredded pork" with a date as early as December 1981.
 
 
 41
 In addition, careful examination of these interrogatories reveals that the response to interrogatory No. 47 was not based on personal knowledge, and was almost certainly based on Chia-Chi's own declaration of first use in its trademark application. First, in response to interrogatory No. 52(b), Tzu Wei stated that it first became aware of Chia-Chi's products in April 1982. Clearly, then, Tzu Wei could not have had personal knowledge of Chia-Chi's use of the mark in December 1981. Furthermore, interrogatory No. 47 asked only whether Tzu Wei "had ever taken the position or believed" that their rights had been infringed. Tzu Wei had, of course, taken such a position in its Notice of Opposition, and in that Notice had claimed use in the United States prior to Chia-Chi's claimed first use date of December 14, 1981. Apparently, therefore, Chia-Chi's own declarations of first use in its trademark application constituted the basis of Tzu Wei's "admission," and consequently the Board should not have given this admission any significant weight in its determination.
 
 
 42
 There is also reason to suspect the accuracy of the admissions in Tzu Wei's response to interrogatory No. 52. Most illuminating in this regard is opposer's exhibit 12, which the Board also relied upon to support its finding of prior use by Chia-Chi. Taken together, however, these two pieces of evidence do not inevitably support the Board's finding.
 
 
 43
 Chia-Chi's exhibit 12 comprises a pair of photographs attached to a piece of paper and a short handwritten note written on the piece of paper above the two photographs. Dr. Wang testified that this piece of paper was given to him by Tzu Wei's attorney in the previous opposition proceeding. The handwritten note states:
 
 
 44
 A grocer in Seattle posted an advertisement on the store's window for the sausage and smoked pork of Taiwan Black Bridge brand. The products sold in this store actually are manufactured by Chia-Chi which has nothing to do with Taiwan Black Bridge. The picture was taken around April 1982.
 
 
 45
 (emphasis added)
 
 
 46
 The events depicted in these photographs apparently formed the basis for Tzu Wei's response to interrogatory No. 52. As noted, however, the handwritten note on the top of exhibit 12 states that the photograph was taken around April 1982. In responding to the interrogatory, it is likely that Tzu Wei simply neglected to specify that the April 1982 date was approximate. This is not surprising since at the time of these interrogatories Tzu Wei would not have considered the exact date of a Spring 1982 use to be critical. Therefore, although the Board was entitled to give some weight to this admission by Tzu Wei, it seriously overstated its probative value.
 
 
 47
 Lastly, the Board in its response to Tzu Wei's request for reconsideration dated June 6, 1994 relied on a passage from this court's opinion in the prior proceeding to show that Chia-Chi's rights in the mark predated Tzu Wei's filing date. In that passage we stated:
 
 
 48
 It was agreed by both sides to this action and by the Board that, in accordance with the terms of incorporation, ownership of the trademark HEI CHIAO passed on May 1 to the newly formed corporation, Chia-Chi Enterprises, Inc.
 
 
 49
 Chien Ming Huang, 849 F.2d at 1459, 7 U.S.P.Q.2d at 1335. From this passage the Board inferred that Tzu Wei conceded that Chia-Chi had rights in the HEI CHIAO mark as of May 1, 1982.
 
 
 50
 The Board's reliance on that passage was, through no fault of its own, incorrect. A review of the record clearly indicates that what both sides agreed to was that ownership of the trademark application passed to the newly formed corporation on May 1, 1982. Whether the owner of that application was entitled to trademark rights in the mark HEI CHIAO was, of course, the issue in that litigation, and was only conceded by Tzu Wei contingently for purposes of the summary judgment motion. Having reviewed the record of the previous litigation in this court, we find no basis to treat Tzu Wei's concession for more than it is worth. Made in the setting of a summary judgment motion going to the issue of ownership, not prior use, and further, relating only to application for registration, the May 1 date concession offers no proof of Chia-Chi's prior use.
 
 
 51
 In summary, of the evidence adduced by the Board to support its finding, the only probative evidence was the final USDA label approval for Chia-Chi's HEI CHIAO sausage dated January 19, 1982; to a more limited degree, Tzu Wei's admission in response to interrogatory No. 52; and to a very limited degree, Chia-Chi's financial statements. These three pieces of evidence, at most show that Chia-Chi had the opportunity to use the HEI CHIAO mark prior to the critical date. From this, Chia-Chi attempted to construct a picture of prior use using the testimony of a witness who had no personal knowledge of any of the events in question. No reasonable factfinder presented with such meager evidence could reasonably conclude that Chia-Chi had met its burden of proof and shown to a preponderance that it had used the HEI CHIAO mark prior to Tzu Wei's filing date.
 
 
 52
 In addition, in this case we face a record which is remarkably devoid of any direct evidence to support Chia-Chi's position. We recognize that parties frequently face substantial hurdles in assembling proof, and we are therefore hesitant to draw inferences from gaps, even suspicious gaps, in the evidence. At some point, however, the lack of documentary or testimonial evidence stretches the limits of credibility, especially when opposer makes no declaration of the unavailability of documentary or testimonial evidence. At that point, the factfinder must weigh any inference from the gaps in the evidence against inferences the factfinder may draw from the other evidence. Is there no individual with personal knowledge of Chia-Chi's affairs in late 1981 who could testify that Chia-Chi sold HEI CHIAO products at that time? No wholesaler who distributed the goods? No common carrier who transported the goods? No retailer who sold the goods? No consumer who bought the goods? Similarly, with respect to Chia-Chi's documentary evidence, are there no hard copies of Chia-Chi's newspaper ads? No financial records tied to the sale of goods bearing the mark? We find this difficult to believe. In the circumstances of this case, the Board should have inferred from Chia-Chi's unexplained failure to produce any direct evidence relating to the events in question that such evidence would be unfavorable to Chia-Chi. Cf. Borror v. Herz, 666 F.2d 569, 573-74, 213 U.S.P.Q. 19, 23 (Fed.Cir.1981) (unexplained failure to call known person with direct knowledge of the facts raises adverse inference that the testimony would be unfavorable or at least would not support the case).
 
 V
 
 53
 We therefore reverse the Board's holding of prior use by Chia-Chi and direct the Board to dismiss Chia-Chi's opposition to Tzu Wei's registration of the BLACK BRIDGE mark. In view of our dispositive holding on the prior use question, we do not reach the issue of whether that prior use was in bad faith, and therefore vacate the portion of the Board's opinion dealing with the bad faith issue.
 
 
 54
 No costs.
 
 
 
 *
 15 U.S.C. Sec. 1052, in relevant part, provides:
 No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it--
 * * *
 (d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive....