This Opinion is a
Precedent of the TTAB

Mailed: September 27, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*Daniel J. Quirk, Inc.*
v.
*Village Car Company*

_____

Cancellation No. 92057667

_____

Aaron Y. Silverstein of Saunders & Silverstein LLP,
   for Daniel J. Quirk, Inc.

Anthony D. Pellegrini of Rudman Winchell,
   for Village Car Company.

_____

Before Bergsman, Adlin and Goodman,
   Administrative Trademark Judges.

Opinion by Goodman, Administrative Trademark Judge:

   Daniel J. Quirk, Inc. ("Petitioner") seeks to cancel the following registrations of

Village Car Company ("Respondent"):

> QUIRK (typed drawing) for "automobile dealership" in
> International Class 35;[1] and

---

[1] Registration No. 2781416, issued November 11, 2003, from an application filed on July 3, 2002, and based upon a claim of first use anywhere and first use in commerce since at least as early as June 1, 1999; Section 8 affidavit accepted; Section 15 affidavit acknowledged; renewed.

QUIRK AUTO PARK (typed drawing) for "automobile dealership" in International Class 35.[2]

On October 1, 2013, Petitioner filed its first Amended Petition for Cancellation on the sole ground of fraud.[3] Respondent, in its Answer, denied the salient allegations in the first Amended Petition for Cancellation.[4] On September 21, 2015, the Board denied the parties' cross-motions for summary judgment, also suggesting that the parties consider Accelerated Case Resolution (ACR) in lieu of a traditional trial. On February 3, 2016, the parties stipulated to resolution by ACR, agreeing that the Board may resolve any genuine issues of material fact and that the evidentiary record submitted with the cross-motions for summary judgment would form the trial record.[5]

---

Effective November 2, 2003, Trademark Rule 2.52, 37 C.F.R. § 2.52, was amended to replace the term "typed" drawing with "standard character" drawing. A mark depicted as a typed drawing is the legal equivalent of a standard character mark. *ProMark Brands Inc. v. GFA Brands, Inc.*, 114 USPQ2d 1232, 1236 n.5 (TTAB 2015) (citing Trademark Manual of Examining Procedure § 807.03(i)).

[2] Registration No. 2781417 issued November 11, 2003, from an application filed on July 3, 2002, and based upon a claim of first use anywhere and first use in commerce since at least as early as June 1, 1999; Section 8 affidavit accepted; Section 15 affidavit acknowledged; renewed. The wording "Auto Park" is disclaimed.

[3] Respondent filed, concurrently with its answer, a motion to dismiss the original petition for cancellation that also had alleged fraud as the sole ground. 1 TTABVUE; 5 TTABVUE; 6 TTABVUE. Petitioner responded to the motion to dismiss and included a first amended petition for cancellation, which the Board accepted, finding the motion to dismiss moot and setting the time for Respondent to answer. 10 TTABVUE.

[4] Respondent also asserted certain affirmative defenses, but did not pursue them through the presentation of evidence or in its brief, and they are therefore deemed waived. *ProMark Brands*, 114 USPQ2d at 1236.

[5] The parties' stipulation provides that "the parties may rely on any evidence submitted in connection with the parties' cross-motions for summary judgment"; however, it does not specifically address objections thereto. In their briefs, the parties did not object to any evidence of record, and rely on some of the same evidence, disagreeing only as to its legal significance. We view the stipulation as providing that the summary judgment evidence is of record, but not providing how the evidence is to be interpreted. We consider the evidence for whatever probative value it may have. We further note that the parties did not stipulate to any cross-examination in respect to the summary judgment witness declarations. The

The parties also stipulated that the subject registrations and pleaded applications and their file histories were of record and that the parties would file ACR briefs.[6] The Board approved the ACR stipulation on February 10, 2016.

## I. The Record

The record includes the pleadings, the registration files, the files of pleaded Application Serial Nos. 85758465 and 85758480, as well as the declarations and exhibits submitted with the parties' cross-motions for summary judgment. Specifically, Petitioner's evidence consists of the declaration (dated May 21, 2015) of Aaron Y. Silverstein, Petitioner's counsel, and the following accompanying exhibits:

Excerpts of Petitioner's Responses to Respondent's First Set of Interrogatories.

Copies of application status reports and February 19, 2013 Office Action for Petitioner's pleaded Application Serial Nos. 85758465 and 85758480.[7]

Copy of April 24, 2003 affidavit of John J. Quirk, Respondent's President, filed in Application Serial Nos. 76427570, 76427571, and 76427572.

Excerpts of Respondent's Responses to Petitioner's First Set of Interrogatories.

Excerpt of April 8, 2015 discovery deposition transcript of John J. Quirk.

Copy of Office Action issued in Application Serial No. 76427571 and copy of April 25, 2003 response to Office Action in Application Serial Nos. 76427570, 76427571, and 76427572, produced by Respondent in Response to Petitioner's Request for Production of Documents and Things.

---

stipulation provided Respondent the option of submitting one additional declaration with its ACR brief to rebut any new arguments made by Petitioner in its ACR brief. Respondent did not submit an additional declaration. 31 TTABVUE.

[6] Aside from the parties' stipulation, we note that the subject registration files also are of record by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b).

[7] Petitioner pleaded common law rights to, and ownership of, pending applications for the marks QUIRK and QUIRK WORKS TO SAVE YOU MONEY, filed under Serial Nos. 85758465 and 85758480.

Respondent's evidence consists of the declaration (dated December 9, 2013) of John J. Quirk, Respondent's President, and the following accompanying exhibits;

Better Business Bureau listing for Quirk Cars Inc., a/k/a Daniel J. Quirk, Inc.

April 24, 2003 affidavit of John J. Quirk, filed in Application Serial Nos. 76427570, 76427571, and 76427572.

November 7, 2002 Office Action issued in Application Serial No. 76427571.

April 25, 2003 response to Office Action in Application Serial Nos. 76427570, 76427571, and 76427572;[8] and

Declaration (dated May 29, 2015) of Anthony D. Pellegrini, Respondent's counsel, with copies of applications as originally filed, for Application Serial Nos. 85758465, 85758480, and 86528200.[9]

## II. Standing

With regard to Petitioner's standing, copies of Office Actions refusing registration of Petitioner's pleaded marks QUIRK and QUIRK WORKS TO SAVE YOU MONEY (Application Serial Nos. 85758465 and 85758480),[10] under Trademark Act Section 2(d), 15 U.S.C. § 1052(d), are of record and are sufficient to show that Petitioner has a stake in the outcome of this proceeding, and as such, establish Petitioner's standing. *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA

---

[8] Serial Nos. 76427570 and 76427572 issued as the involved Registration Nos. 2781416 and 2781417, respectively. Serial No. 76427571 for the mark THE QUIRK BOYS (typed drawing) was abandoned as part of a settlement of an opposition with The Pep Boys but continued use of the mark was permitted. 12 TTABVUE 25; ¶ 26, December 9, 2013 declaration of John J. Quirk.

[9] Application Serial No. 86528200, for the mark QUIRKPARTS, also is owned by Petitioner but was not pleaded. The application is presently suspended.

[10] The applications are of record by stipulation. 25 TTABVUE 20-74.

1982) (standing may be shown by pleading and proving that plaintiff's application was refused registration in view of defendant's registration).

## III. Fraud

Fraud in procuring a trademark registration occurs when an applicant for registration knowingly makes a false, material representation of fact in connection with the application with the intent to deceive the United States Patent and Trademark Office (USPTO), thereby obtaining a registration to which it is otherwise not entitled. *See In re Bose Corp.*, 580 F.3d 1240, 91 USPQ2d 1938, 1941 (Fed. Cir. 2009). A party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof. *Bose*, 91 USPQ2d at 1939, (citing *W.D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co.*, 377 F.2d 1001, 153 USPQ 749, 750 (CCPA 1967)). "[T]he very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *Id.* at 1939, (quoting *Smith Int'l, Inc. v. Olin Corp.*, 209 USPQ 1033, 1044 (TTAB 1981)) (internal quotations omitted).

It is Petitioner's position that the oath in the application declaration in Respondent's registrations for QUIRK and QUIRK AUTO PARK were executed fraudulently because Respondent knew of and failed to disclose Petitioner's allegedly prior superior rights in the QUIRK and QUIRK WORKS TO SAVE YOU MONEY trademarks in connection with automobile dealerships.[11] To prevail on this claim,

---

[11] Amended Petition for Cancellation, 9 TTABVUE.

Petitioner must prove that: (1) Petitioner was the user of the same or a confusingly similar mark at the time the oath was signed; (2) Petitioner had legal rights superior to Respondent's rights at the time Respondent signed the applications for registration;[12] (3) Respondent knew that Petitioner's rights in the mark were superior to Respondent's and either believed that a likelihood of confusion would result from Respondent's use of its mark or had no basis for believing otherwise; and that (4) Respondent, in failing to disclose these facts to the USPTO, intended to procure a registration to which it was not entitled. *Qualcomm Inc. v. FLO Corp.*, 93 USPQ2d 1768, 1770 (TTAB 2010); *Intellimedia Sports Inc. v. Intellimedia Corp.*, 43 USPQ2d 1203, 1205 (TTAB 1997). However, fraud will not lie against an applicant who holds an honest, good faith belief in its right to register a mark and signs an application with the statutorily prescribed ownership statement, which is phrased in terms of subjective belief. *Woodstock's Enters. Inc. (California) v. Woodstock's Enters. Inc. (Oregon)*, 43 USPQ2d 1440, 1443 (TTAB 1997), *aff'd*, 152 F.3d 942 (Fed. Cir. 1998).

We find that Petitioner has failed to prove all the elements of its fraud claim.

---

[12] Superior rights in this context can be shown to be so by prior use, or by being clearly established e.g., by court decree or previous agreement of the parties. *Intellimedia*, 43 USPQ2d at 1207.

A. **Whether Petitioner was using the mark QUIRK at the time Respondent signed the oath for its applications?**

We first consider the question of whether Petitioner was using the same or a confusingly similar mark at the time the oath was signed for the involved registrations. The relevant evidence follows:[13]

April 24, 2003 Affidavit of John J. Quirk, offered by Petitioner:[14]

> The Quirk Automobile Dealers group has dealerships located in Quincy and Braintree, Massachusetts, towns two hundred fifty miles away from Bangor, Maine.[15]

December 9, 2013 Declaration of John J. Quirk, offered by Respondent:

> At the time I executed the '570, '571, and '572 Applications, I was aware that Petitioner was using one or more marks incorporating the word 'Quirk' for its car dealerships located in southern Massachusetts.[16]

April 8, 2015 Excerpt of Discovery Deposition Transcript of John J. Quirk, offered by Petitioner:

---

[13] As reflected herein, some of the parties' declaration exhibits overlap, namely, the April 24, 2003 affidavit of John J. Quirk, the November 7, 2002 Office Action issued in Application Serial No. 76427571, and the April 25, 2003 response to Office Action.

[14] The April 24, 2003 Quirk affidavit was filed in connection with Respondent's April 28, 2003 response to Office Action, but Petitioner now proffers statements in that affidavit as admissions against Respondent's interests. Statements in an application constitute admissions and may be considered as evidence, albeit not conclusive evidence, of the truth of the assertions therein. *EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.*, 213 USPQ 597, 599 (TTAB 1982), *aff'd,* 706 F.2d 1213, 217 USPQ 986 (Fed. Cir. 1983), (citing *Bakers Franchise Corp. v. Royal Crown Cola Co.*, 404 F.2d 985, 160 USPQ 192 (CCPA 1969)); *Maremont Corp. v. Airlift Corp.*, 463 F.2d 1114, 174 USPQ 395, 396 (CCPA 1972)). As offered by Petitioner, the statements made in the April 24, 2003 Quirk affidavit filed in Respondent's applications qualify as admissions of Respondent, and fall within the statements which are expressly excluded from the definition of hearsay under Fed. R. Evid. 801(d)(2).

[15] ¶ 17, 25 TTABVUE 78.

[16] ¶ 7, 12 TTABVUE 23. The reference to '571 is a reference to Application Serial No. 76427571, which, as noted in n.8 *supra,* is abandoned. 12 TTABVUE 25.

Q. To the best of your recollection, when did you become aware of my client, Daniel J. Quirk, Incorporated, operating as Quirk Auto in Massachusetts?

A. I would say sometime in the '90s.

Q. Early '90s late '90s?

A. Let me think here. The Chevrolet dealership came – I'd say around mid '90s around in there.

Q. And at the same time did you become aware that my client was using Quirk as a trademark to sell cars?

A. I knew that there was a Quirk Chevrolet out there, yes.

Q. And do you remember how you became aware of the Quirk dealership in Massachusetts?

A. I think we were trying to locate a vehicle or something, do a swap and we found out that there was a Quirk in Massachusetts.

Q. So you were aware of our client and its use of the Quirk trademark on July 1, 2002?

A. Yes.[17]

Petitioner's Interrogatory No. 3, offered by Petitioner:[18]

Describe in detail the circumstances under which Registrant first became aware of Petitioner, Petitioner's Quirk Marks and Petitioner's services, including but not limited to the date when Registrant became aware of each of the foregoing and the person(s) most knowledgeable of the foregoing.

Answer: VCC became aware of Petitioner, Petitioner's QUIRK Marks and Petitioner's Services in or about the late 1990s by way of General Motors listings of dealers.

---

[17] 25 TTAVUE 84-85.

[18] 25 TTABVUE 82.

The foregoing is sufficient for us to find that Petitioner was using one or more marks incorporating the term QUIRK, a term identical to Respondent's QUIRK mark, and similar to Respondent's QUIRK AUTO PARK mark, at the time of Respondent's filing of the applications which matured into the involved registrations.

    B.    Whether Petitioner has legal rights in the mark QUIRK superior to Respondent's rights?

We next consider whether Petitioner has priority as to the mark QUIRK or QUIRK-formative marks. Respondent states in its brief that it does not concede Petitioner's priority.[19] In noting Petitioner's allegations of prior use, Respondent points to its own use of THE QUIRK BOYS since at least 1973 in connection with automobile dealerships.[20]

With regard to establishing prior legal rights, Petitioner must prove that it possesses rights in one of its pleaded marks QUIRK and QUIRK WORKS TO SAVE YOU MONEY that are superior to Respondent's rights in any QUIRK or QUIRK-formative marks. *See Bayer Consumer Care AG v. Belmora LLC*, 90 USPQ2d 1587, 1593 (TTAB 2009) (party must adequately plead and prove prior superior rights in the United States in connection with the fraud claim based on a false declaration filed with the application). Petitioner must prove its priority by a preponderance of the

---

[19] 34 TTABVUE 13. We note that a party may rely on use that is strictly intrastate to claim priority in a Board proceeding. *See First Niagara Ins. Brokers Inc. v. First Niagara Fin. Grp. Inc.*, 476 F.3d 867, 81 USPQ2d 1375 (Fed. Cir. 2007).

[20] 34 TTABVUE 14. ¶ 7, April 24, 2003 affidavit of John J. Quirk. While Petitioner questions the accuracy of this statement, it has not submitted any testimony or evidence to contradict the assertion made therein. That is to say, Petitioner has not introduced any testimony or evidence to cast doubt upon the accuracy of Respondent's statement that it has used THE QUIRK BOYS since at least 1973 in connection with automobile dealerships.

evidence. *Hydro-Dynamics Inc. v. George Putnam & Co. Inc.*, 811 F.2d 1470, 1 USPQ2d 1772, 1773 (Fed. Cir. 1987). Moreover, Petitioner's evidence of priority is not to be considered piecemeal but "[r]ather, one should look at the evidence as a whole, as if each piece of evidence were part of a puzzle which, when fitted together, establishes prior use." *West Florida Seafood Inc. v. Jet Rests. Inc.*, 31 F.3d 1122, 31 USPQ2d 1660, 1663 (Fed. Cir. 1994). In this case, and pursuant to the parties' stipulation, Petitioner introduced into evidence excerpts of Petitioner's answers to Respondent's interrogatory requests. These interrogatory responses from Petitioner state:

> Petitioner has been using the QUIRK trademark in U.S. interstate commerce since at least as early as May 31, 1977; Petitioner has been using the QUIRK WORKS TO SAVE YOU MONEY trademark in U.S. interstate commerce since at least as early as March 31, 1980.[21]

> Petitioner has [sic] using the QUIRK trademark in the greater New England area since at least as early as May 31, 1977.[22]

> Petitioner has used the [undefined] marks in connection with automotive dealerships and related services, wholesale automotive parts, automotive maintenance repair and automotive rental services.[23]

> Petitioner has been using the QUIRK trademark in connection with automotive dealerships and related services since at least as early as May 31, 1977.[24]

---

[21] 25 TTABVUE 7-8. Interrogatory no. 3.

[22] 25 TTABVUE 7. Interrogatory no. 4.

[23] 25 TTABVUE 6. Interrogatory no. 2. This interrogatory response incorporates a response to Interrogatory no. 1 as to Petitioner's marks, but Interrogatory no. 1 has not been included in the excerpts.

[24] 25 TTABVUE 10. Interrogatory no. 10.

…Petitioner has regularly advertised in The Boston Globe
which has a broad circulation throughout New England.[25]

We observe that subject to certain exceptions, at trial a party may not rely on its own answers to an adversary's interrogatories. Trademark Rule 2.120(j)(5), 37 C.F.R. § 2.120(j)(5) ("an answer to an interrogatory … may be submitted and made part of the record only by the receiving or inquiring party."). *See Beecham Inc. v. Helene Curtis Industries, Inc.*, 189 USPQ 647, 647 (TTAB 1976) (ordinarily a party may not rely upon his own answers to his adversary's interrogatories since said answers would be self-serving in character); Charles A. Wright, Arthur R. Miller et al., 8B Federal Practice and Procedure 3d § 2180 (April 2016) ("Older cases said that a party could not ordinarily introduce his or her own answers to an opponent's interrogatories, since they would be self-serving statements. … But a more correct explanation would be that a party's own statements are hearsay when offered by the party to prove the truth of the matter asserted, and that they fall within no recognized hearsay exception."). See also *Underberg v. United States*, 362 F. Supp. 2d 1278, 1283 (D.N.M. 2005) (a party generally may not introduce statements from its own answers to interrogatories as evidence because such answers typically constitute hearsay when used in this manner) (citing cases).[26] However, because these answers were submitted with Petitioner's cross-motion for summary judgment and the parties expressly

---

[25] 25 TTABVUE 9-10. Interrogatory no. 8.

[26] On the other hand, Fed. R. Civ. P. 33(c) generally permits interrogatory answers to be used as evidence by the adverse party, and when so offered, answers to interrogatories usually are not considered hearsay insofar as they fall under the exception for statements made by a party opponent. See Fed. R. Evid. 801(d)(2).

stipulated to each party's ability to rely on the summary judgment evidence, the materials are properly of record. Once in the record, a party may properly argue the probative effect of such evidence. *See Safer Inc. v. OMS Investments Inc.*, 94 USPQ2d 1031, 1040 (TTAB 2010); *Beecham Inc.*, 189 USPQ at 647.

Nonetheless, we have given the interrogatory responses limited weight.[27] *See e.g., Fidelity & Deposit Co. of Maryland v. Hudson United Bank*, 653 F.2d 766, 777 (3rd Cir. 1981) (trier of fact has discretion as to weight to give to an interrogatory response); *Marcoin, Inc. v. Edwin K. Williams & Co., Inc.*, 605 F.2d 1325, 1328, 28 Fed. R. Serv. 2d 157 (4th Cir. 1979) (same). "Oral testimony, if sufficiently probative, is normally satisfactory to establish priority of use in a trademark proceeding." *Powermatics, Inc. v. Globe Roofing Prods. Co.*, 341 F.2d 127, 144 USPQ 430, 432 (CCPA 1965). However, Petitioner's own interrogatory responses, offered in its own behalf, are not oral testimony, and are not conclusive on the question of priority.[28]

---

[27] We note that where ordinarily inadmissible hearsay evidence is admitted into evidence without objection, it may be considered for whatever probative value the finder of fact chooses to give it. *See e.g., Sunnen Products Co. v. Sunex Int'l Inc.*, 1 USPQ2d 1744, 1746 n.9 (TTAB 1987); *Flowers Indus. Inc. v. Interstate Brands Corp.,* 5 USPQ2d 1580, 1582 n.4 (TTAB 1987). When parties specifically agree to waive hearsay objections, the Board may rely on the evidence for the truth of the matter asserted. *Blackhorse v. Pro-Football, Inc.*, 111 USPQ2d 1080, 1086 (TTAB 2014), *aff'd,* 112 F. Supp. 3d 439, 115 USPQ2d 1524 (E.D. Va. 2015), appeal filed, No. 15-1874 (4th Cir. Aug. 6, 2015).

[28] We do not know whether these interrogatory answers were verified or by whom as no verification page was included with the interrogatory excerpts. It has been stated that unsigned and unverified answers to interrogatories do not qualify as answers under Fed. R. Civ. P. 33. *Cabales v. United States*, 51 F.R.D. 498, 499 (S.D.N.Y. 1970), *aff'd*, 447 F.2d 1358 (2d Cir. 1971). Courts have also found that unverified answers to interrogatories are not competent evidence or are not a valid basis for factual findings in connection with a motion for summary judgment. *Tesco Corp. v. Weatherford Intern., Inc.*, 904 F. Supp. 2d 622, 636 (S.D. Tex. 2012); *Wichita Clinic, P.A. v. Columbia/HCA Healthcare Corp.*, 45 F. Supp. 2d 1164, 1205 (D. Kan. 1999).

*Tzu Wei Chen Food Co., Ltd., v. Chia-chi Enterprises, Inc.*, 73 F.3d 379, 38 USPQ2d 1932, 1935-37 (Fed. Cir. 1995) (table decision) (finding evidence insufficient to establish priority, noting lack of direct evidence and that interrogatory responses are not treated as conclusive admissions but evidential admissions by the courts, which entitles them to less than conclusive weight to support an inference of prior use).[29] Petitioner's interrogatory responses are not effective for the purpose of establishing priority. We also note that Petitioner's pleaded applications, even though of record, were filed subsequent to the filing date of the applications that matured into Respondent's registrations and do not afford Petitioner priority. Because Petitioner has failed to prove that it has superior rights in the mark QUIRK or any QUIRK-formative marks, Petitioner's fraud claim fails on this basis alone.

Even if we had found that Petitioner had superior rights and that Respondent's declarations filed in the applications were false, as discussed below, the evidence of record is not sufficient to prove that the statements made in the application oaths were made with fraudulent intent. *See Intellimedia*, 43 USPQ2d at 1207; *Woodstock's Enterprises*, 43 USPQ2d at 1444.

---

[29] "Conclusive admissions are binding on the party making them, and preclude the admitting party from offering proof to refute the admission. In contrast, evidential admissions are not binding; instead, they merely constitute admissible evidence to be considered in combination with all other relevant evidence." *Tzu Wei Chen Food Co.*, 38 USPQ2d at 1936.

C.   Whether Respondent knew that Petitioner had superior rights in the QUIRK Mark and believed a likelihood of confusion would result or had no basis for believing otherwise? [30]

Petitioner argues that statements made in the December 9, 2013 declaration of John J. Quirk as well as statements made in Respondent's 2003 response to Office Action to Application Serial Nos. 76427570 and 76427572 establish that Respondent acknowledged Petitioner's superior rights and had no basis for believing likelihood of confusion would not result from Respondent's use of its marks. Respondent, on the other hand, argues that the statements made in the December 9, 2013 declaration of John J. Quirk establish Respondent's belief that Petitioner was using its mark only in intrastate commerce and therefore, no confusion would arise.

The relevant evidence regarding Respondent's knowledge of Petitioner's use and Respondent's belief regarding likelihood of confusion follows:

April 24, 2003 Affidavit of John J. Quirk:

> The mark 'The Quirk Boys' has been used to identify dealerships owned by Village Car Company since at least 1973.[31]

---

[30] Petitioner has argued in its brief that at the time Respondent signed the application oaths, it was not reasonable for Respondent to believe that no likelihood of confusion would occur. Although the Board in the past considered the question of whether an applicant, when signing the application oath, had an honest good faith belief of its right to register its mark in terms of reasonableness, *see e.g., Intellimedia*, 43 USPQ2d at 1207 (citing cases), our primary reviewing court in *Bose* has stated that "reasonableness … is not part of the analysis." *Bose,* 91 USPQ2d at 1942.

[31] ¶ 7, 25 TTABVUE 77. We note that Respondent may have believed it had superior rights in QUIRK or QUIRK-formative marks in view of John J. Quirk's April 24, 2003 affidavit that indicates use of the mark THE QUIRK BOYS since 1973, versus Petitioner's allegations of use of QUIRK since 1977.

The mark 'Quirk' has been used to identify dealerships owned by Village Car Company since 1999.[32]

The mark 'Quirk Auto Park' has been used continuously in commerce since 1999.[33]

Village Car Company has no market penetration in southern Massachusetts.[34]

The Quirk Automobile Dealers group has dealerships located in Quincy and Braintree, Massachusetts, towns two hundred fifty miles away from Bangor, Maine.[35]

The Quirk Automobile Dealers group does not advertise in Maine.[36]

No other entity uses the 'Quirk' mark in Village Car Company's market.[37]

April 25, 2003 response to Office Action offered by Petitioner:[38]

> [t]he existence of an automobile dealership group in southern Massachusetts using the mark 'Quirk' does not create a likelihood of confusion with respect to Applicant's automobile dealership group located in northern Maine. The two groups are unrelated to each other and are not competitors. Affidavit of John Quirk, ¶ 16. The towns of Quincy and Braintree, Massachusetts and Bangor, Maine are 250 miles distant, thereby reflecting completely different markets. *See id*. at ¶ 17. The Massachusetts dealerships do not advertise in the Maine market, nor do the Bangor dealerships advertise in the Massachusetts market. *See id* at ¶¶18-19. Applicant's customers come almost exclusively from a geography within a 100 mile radius of Bangor, Maine. *See id*. at ¶ 12. Applicant has no

---

[32] ¶ 8, 25 TTABVUE 77.

[33] ¶ 9, 25 TTABVUE 77.

[34] ¶ 15, 25 TTABVUE 78.

[35] ¶ 17, 25 TTABVUE 78.

[36] ¶ 18, 25 TTABVUE 78.

[37] ¶ 27, 25 TTABVUE 79.

[38] 25 TTABVUE 109. See n.14.

market penetration in southern Massachusetts. *See id.* at ¶ 15.

December 9, 2013 Declaration of John J. Quirk:

> At the time I executed the '570, '571, and '572 Applications, I had no knowledge, information, or belief that Petitioner was using any mark incorporating the word 'Quirk' anywhere outside of southern Massachusetts.[39]

> At the time I executed the '570, '571, and '572 Applications, I had no knowledge, information or belief that Petitioner had prior rights in any mark incorporating the word 'Quirk' anywhere outside of southern Massachusetts.[40]

> At the time I executed the '570, '571, and '572 Applications, I had no knowledge, information or belief that Petitioner had superior rights in any mark incorporating the word 'Quirk' anywhere outside of southern Massachusetts.[41]

> At the time I executed the '570, '571, and '572 Applications, I had no reasonable belief that there would be any likelihood of confusion between any mark used by Petitioner incorporating the word 'Quirk' and VCC's marks QUIRK, THE QUIRK BOYS, and QUIRK AUTO PARK.[42]

> At the time I executed the '570, '571, and '572 Applications, I had no intent to willfully deceive the USPTO by failing to disclose Petitioner's use of a mark containing the word 'Quirk' in an effort to obtain a registration to which I knew VCC was not entitled.[43]

> …VCC expressly disclosed Petitioner's use of marks containing the word 'Quirk' during the prosecution of the '570, '571, and '572 Applications …[44]

---

[39] ¶ 9, 12 TTABVUE 23.

[40] ¶ 9, 12 TTABVUE 23.

[41] ¶ 10, 12 TTABVUE 23.

[42] ¶ 12, 12 TTABVUE 23.

[43] ¶ 13, 12 TTABVUE 23.

[44] ¶ 24, 12 TTABVUE 25.

Regardless of any knowledge an applicant may have had of another's use, if an applicant believes that it was the owner of the mark sought to be registered at the time it made application for registration, no fraudulent intent can be inferred from statements made in the application declaration. *See e.g.*, *Kelly Servs. Inc. v. Greene's Temporaries Inc.*, 25 USPQ2d 1460, 1463 (TTAB 1992) (an applicant that believes its right to register a mark is superior to that of another user of the same or similar mark will not be held to have committed fraud by signing an application with the statutorily prescribed ownership statement); *UMC Electronics Co. v. UMC Indus., Inc.*, 184 USPQ 319, 320 (TTAB 1974) (no fraud found where respondent knew corporate name of petitioner but believed it was owner of mark at the time it sought registration); *Jacobsen Mfg. Co. v. Sno Jet Ltd.,* 179 USPQ 635, 637 (TTAB 1973) (applicant's belief, at the time of filing the application, that another's use was infringing use is not inconsistent with the application oath that no one else has the right to use the mark and does not constitute a misrepresentation); *Griffin Wellpoint Corp. v. AMSTED Indus. Inc.*, 172 USPQ 503, 506 (TTAB 1971) (insufficient to impute fraud from respondent's knowledge or constructive knowledge of petitioner's use of similar mark where respondent believed at the time of filing the application that it was owner of the mark, even though respondent's belief was based on ownership of a registration and use of the mark for different goods); *Blanchard Importing & Distributing Co., Inc. v. Societe E. Blanchard et Fils*, 169 USPQ 615 (TTAB 1971) (mere fact that opposer contested applicant's right to use the mark and was later adjudged to have prior rights to applicant was not a basis for fraud where applicant had a firm belief

at the time it filed its application that it was the only one entitled to use the mark in commerce).

John J. Quirk's December 9, 2013 declaration and the statements made by Respondent in its April 25, 2003 response to an Office Action indicate that Respondent believed that no likelihood of confusion would result from concurrent use of the parties' marks due to lack of market penetration and geographic distance, and Respondent's belief that Petitioner's rights were local and limited to southern Massachusetts. Insofar as this record is concerned, there is nothing to suggest that Respondent's statement in the application oaths to the effect that no one else had a right to use the QUIRK mark in commerce "as to be likely … to cause confusion" was based on anything other than an honest belief that Respondent had superior rights to Petitioner in QUIRK or QUIRK-formative marks because Petitioner's use was limited to intrastate commerce. While Respondent's belief that "Petitioner did business only in Southern Massachusetts and had no [prior] right to use the 'QUIRK' mark in interstate commerce"[45] might have been mistaken, it does not amount to fraud. *H. Sichel Sohne, GmbH v. Michel Monzain Selected Wines, Inc.*, 202 USPQ 62, 65 (TTAB 1979). *See also Bausch & Lomb Inc. v. Leupold & Stevens Inc.*, 1 USPQ2d 1497 (TTAB 1986) (no fraud found where claim of five years use was technically incorrect, as the claim of use was made with an honest belief that it was true); *Girard Polly-Pig, Inc. v. Polly-Pig by Knapp, Inc.*, 217 USPQ 1338, 1342 (TTAB 1983) (although respondent at the time it filed its application was aware of another's use of

---

[45] 34 TTABVUE 14.

POLLY-PIG, its honest good faith belief that no one else had the right to use the trademark POLLY-PIG was sufficient to negate any inference of fraud); *Schwinn Bicycle Co. v. Murray Ohio Mfg. Co.*, 393 F. Supp. 973, 172 USPQ 14, 21 (M.D. Tenn. 1971), *aff'd*, 470 F.2d 975, 176 USPQ 161 (6th Cir. 1972) (false statements in affidavit which formed trademark application can reasonably be construed to have resulted from inadvertence or ignorance of the applicable law of trademarks and not a knowing misstatement).

D.   Whether Respondent intended to deceive the USPTO in order to procure a registration to which it was not entitled?

Petitioner submits that "[t]he simple act of causing the VCC Applications to be filed thereafter demonstrates the intention to procure registrations to which VCC was not entitled."[46] However, the mere filing of the signed applications does not provide an inference of an intent to deceive. *Kemin Indus., Inc. v. Watkins Prods., Inc.*, 192 USPQ 327, 329 (TTAB 1976) (the wording of the oath in terms of a "belief" of applicant "preclude[s] a definitive statement by the affiant that could be ordinarily used to support a charge of fraud."). Petitioner also argues that we can infer deceptive intent from Respondent's April 25, 2003 response to an Office Action in which Respondent acknowledged "Quirk's rights in the QUIRK mark without prompting from the USPTO."[47] However, Respondent's disclosure of Petitioner's use in its application, wherein Respondent stated it believed that there was no likelihood of confusion by

[46] 33 TTABVUE 15.

[47] 33 TTABVUE 17.

Petitioner's concurrent use and that Petitioner's use was geographically restricted to southern Massachusetts, i.e., not reflecting a right to use its mark "in commerce," as defined in Section 45 of the Trademark Act, 15 U.S.C. § 1127, is not enough for us to find an intent to deceive in executing the applications' oaths. If anything, it establishes the opposite. *See e.g., Marshall Field & Co. v. Mrs. Fields Cookies,* 25 USPQ2d 1321, 1329 (TTAB 1992) ("forthright disclosure of third-party users by petitioner in its application which petitioner stated were believed to be local and without superior rights to its own" in connection with Section 2(f) claim of substantially exclusive use did not support inference of fraud in connection with counterclaim for cancellation). *Cf. Aventis Pharma S.A. v. Amphastar Pharm. Inc.*, 525 F.2d 1334, 87 USPQ2d 1110, 1125 (Fed. Cir. 2008) (Rader, dissenting) (candor is inconsistent with deceptive intent, where party revealed the error to the USPTO and submitted underlying data in second declaration, correcting the mistake).

Lastly, Petitioner submits that we can infer deceptive intent from Respondent's President John J. Quirk's education, intellect and experience in signing important legal documents, as "he would also be able to appreciate the legal consequences – and pitfalls – of signing the oaths while withholding personal knowledge of information to the contrary."[48] However, testimony regarding the education and business experience of Respondent's President who signed the applications' oaths does not lend itself to this inference and is not sufficient to constitute evidence, direct or indirect, of fraudulent intent. *Embarcadero Techs., Inc. v. Delphix Corp.*, 117 USPQ2d 1518,

---

[48] 33 TTABVUE 17; 25 TTABVUE 83-97.

1523 (TTAB 2016). Moreover, on this record, Mr. Quirk, as discussed above, demonstrated candor in his communications with the USPTO.

It has long been recognized that direct evidence of deceptive intent is rarely available and such intent may be inferred from the surrounding facts and circumstances, that is, by clear and convincing indirect and circumstantial evidence. *See Bose*, 91 USPQ2d at 1941. Further, when drawing an inference of intent, "the involved conduct, viewed in light of all the evidence … must indicate sufficient culpability to require a finding of intent to deceive. …" *Id*. (internal citations omitted).

Petitioner was required to set forth specific facts, by declarations or other evidence, supporting an inference of Respondent's fraudulent intent in declaring that it was the owner of the QUIRK mark or QUIRK-formative marks. No factual statements under oath, discovery deposition testimony, or other evidence in this record illuminates Respondent's beliefs as to its rights in the QUIRK or QUIRK-formative marks. Nor were any factual statements under oath, discovery deposition testimony or other evidence introduced regarding Respondent's understanding of intrastate or interstate commerce, or Respondent's beliefs as to likelihood of confusion between the parties' QUIRK and QUIRK-formative marks. In this case, it was incumbent upon Petitioner to establish such a factual basis for fraud by eliciting testimony or other evidence on these issues. We may not infer, on this record, that Respondent had a deceptive intent in filing its application oaths. Petitioner has failed to show, by direct or indirect evidence, that Respondent intended to deceive the USPTO.

- 22 -

**Decision**: The petition for cancellation is dismissed.